IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANGEL MEJIA | : | CRIMINAL ACTION No. 05-32-1 |
| v. | : | CIVIL ACTION No. 10-3679 |
| UNITED STATES OF AMERICA | : | |

<u>MEMORANDUM</u>

**Juan R. Sánchez, J.**                                                            September 19, 2013

     Defendant Angel Mejia has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, asserting (1) his guilty plea was coerced and involuntary because this Court allegedly participated in plea negotiations; (2) his plea was unknowing, unintelligent, and involuntary because this Court misstated the applicable statutory mandatory minimum penalty on one of the counts of conviction; (3) the Government breached its promise in the guilty plea agreement that his sentence would be no higher than 17 years; and (4) this Court violated his due process rights when it declined to follow the Government's sentencing recommendation at the resentencing hearing. The Government asks this Court to dismiss Mejia's motion based on the collateral review waiver provision in his guilty plea agreement. Because Mejia knowingly and voluntarily waived his right to collaterally attack his conviction and sentence in his guilty plea agreement, and because enforcement of Mejia's waiver would not work a miscarriage of justice in this case, the Government's motion will be granted, and Mejia's § 2255 motion will be dismissed.

**FACTS**

     On January 20, 2005, Mejia was indicted on charges of conspiracy to commit hostage taking, in violation of 18 U.S.C. § 1203(a) (Count 1); hostage taking, in violation of 18 U.S.C. § 1203(a) (Count 2); assaulting, resisting, and impeding federal agents, in violation of 18 U.S.C. § 111 (Counts 3 and 4); attempted murder of a federal employee, in violation of 18 U.S.C. § 1114 (Counts 5 and 6);

using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Counts 7 and 8); and possession of a firearm by an alien illegally or unlawfully in the United States, in violation of 18 U.S.C. § 922(g)(5)(A) (Count 9). A superseding indictment was filed on April 28, 2005, charging Mejia with the same offenses. The charges against Mejia arose out of his involvement in a hostage taking scheme, in which he and a coconspirator kidnapped the victim at gunpoint and held him at the home of a third coconspirator while they demanded a $1 million ransom from the victim's parents, threatening the victim would be killed unless the ransom was paid. A few days later, after arranging a meeting with the victim's parents, Mejia drove the victim to the designated location and released him from the car prior to the ransom being delivered. As the victim walked away from the car, FBI agents saw Mejia fire a weapon and responded to the scene, at which point Mejia fled in his car, exchanging shots with the agents. After fleeing, Mejia crashed his car, and agents apprehended him a short distance from the scene.

On June 20, 2005, Mejia pleaded guilty to all of the counts against him pursuant to a written guilty plea agreement. The plea agreement specified the statutory maximum and mandatory minimum penalties Mejia was facing, stating the Court could impose on Mejia a total maximum sentence of life imprisonment and a total mandatory minimum sentence of 17 years (consisting of 7 years on Count 7, the first § 924(c) count, and 10 years on Count 8, the second § 924(c) count).[1] Guilty Plea Agreement ¶ 4. The plea agreement also included the following broad appellate and collateral review waiver provision:

---

[1] Count 7 charged Mejia with a § 924(c) violation based on his use of a gun on October 8, 2004, the date the victim was removed from his home at gunpoint. The § 924(c) violation charged in Count 8 concerned Mejia's use of a gun when attempting to collect the ransom payment two days later, on October 10, 2004.

In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law.

 a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of his sentence.

 b. If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claims that:

  (1) the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 4 above

 or

  (2) the sentencing judge unreasonably departed upward from the otherwise applicable sentencing guideline range.

If the defendant does appeal pursuant to this paragraph, no issue may be presented by the defendant on appeal other than those described in this paragraph.

*Id.* ¶ 7.

At the change of plea hearing, this Court reviewed the terms of the guilty plea agreement, including the applicable penalties and the appellate waiver provision, with Mejia.[2] The Court explained the maximum and minimum penalties Mejia was facing on each count and in the aggregate, consistent with the information in the guilty plea agreement. Change of Plea Hr'g Tr. 11-14, June 20, 2005. The Court also advised Mejia "that no one—and I mean no one—can guarantee you what

---

[2] Because Mejia does not speak English, the change of plea hearing was conducted through a Spanish-speaking interpreter (as were all other court proceedings). At the change of plea hearing, Mejia testified his court-appointed attorney, who is also fluent in Spanish, reviewed the guilty plea agreement with him and translated the agreement into Spanish for his benefit. Change of Plea Hr'g Tr. 10-11, June 20, 2005.

sentence you will get from me," *id.* at 21, and repeatedly emphasized the possibility that the Court could impose the statutory maximum on each Count. *See id.* at 14 (explaining "[i]n other words, you basically could be warehoused in a United States prison for the rest of your natural life"); *id.* at 21 ("Do you understand that you could receive basically the maximum permitted by law as to each count . . . ?"); *id.* at 22 (noting the Court was not bound by the Sentencing Guidelines, but could "give [Mejia] up to the statutory maximum" and could "put [him] in a prison for the rest of [his] natural life"). Mejia confirmed he understood the maximum penalties he was facing, and stated he still wanted to plead guilty, notwithstanding the possibility he might receive a life sentence. *Id.* at 14; *see also id.* at 21-22.

The Court returned to the issue of sentencing later in the plea colloquy, explaining Mejia's sentence would be determined by the Court at a later date and Mejia would not be permitted to withdraw his guilty plea if the Court declined to follow the parties' recommendations. *See id.* at 30-33. In response to the Court's questions, Mejia confirmed he had decided to plead guilty of his own free will and no one had threatened him or promised him anything to get him to plead guilty. *Id.* at 33-34.

As to the appellate waiver provision, the Court confirmed Mejia understood the waiver meant "that by pleading guilty [he] [would] be voluntarily and expressly waiving all right to appeal, or to collaterally attack [his] conviction, sentence, or any matter relating to the prosecution of this case, whether such right to appeal or collaterally attack arises under the law, or any provision of the law, and that [his] appeal rights [were] very, very limited." *Id.* at 27-28; *see also id.* at 29 (explaining

Mejia was "giving up basically all of [his] [appellate] rights").[3] Upon finding Mejia was alert and competent; his decision to plead guilty was knowingly and voluntarily made and was not the result of any threats, force, or promises other than those contained in the plea agreement; and he understood the charges against him, the maximum and mandatory minimum penalties, and the trial rights he was giving up by pleading guilty, this Court accepted Mejia's guilty plea. *See id.* at 40-42.

Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report (PSR) in which the probation officer concluded the mandatory minimum sentence on Count 8 (the second § 924(c) count) was 25 years, rather than 10 years, as represented in the guilty plea agreement and at the change of plea hearing. *See* 18 U.S.C. § 924(c)(1)(C)(i) (providing "[i]n the case of a second or subsequent conviction under this subsection, the person shall . . . be sentenced to a term of imprisonment of not less than 25 years"). Mejia objected to the 25-year mandatory minimum as conflicting with the 10-year mandatory minimum set forth in the Government's plea papers and on the basis that the two § 924(c) counts arose out of the same set of facts (i.e., the kidnapping) and should therefore be treated as a single conviction; however, he did not seek to withdraw his guilty plea based on the revised mandatory minimum.

Rather, one week before the scheduled sentencing hearing, Mejia filed a motion to withdraw his guilty plea on the sole basis that he was innocent of the kidnapping. Contrary to his earlier representations—both in his Mirandized confession to law enforcement agents and at the change of plea hearing, where he admitted to the facts as summarized by the Government—Mejia claimed the

---

[3] The Government also summarized the appellate waiver provision at the change of plea hearing, explaining that by signing the guilty plea agreement, Mejia was "voluntarily and expressly waiv[ing] all rights to appeal or collaterally attack his conviction, sentence, or any other matter related to this prosecution," subject to limited exceptions. *Id.* at 19-20.

victim had orchestrated his own kidnapping in an attempt to extort ransom money from his father to pay a debt and, as a result, Mejia could not be guilty of kidnapping because he did not take the victim from his home against his will. Following an evidentiary hearing on October 3, 2005, at which Mejia testified, this Court denied Mejia's motion to withdraw his guilty plea, finding his claim of innocence lacked credibility.

At the sentencing hearing on October 6, 2005, this Court overruled Mejia's objections to the PSR, including his objection to the 25-year mandatory minimum on Count 8. The Court sentenced Mejia to a total of 646 months of imprisonment (just under 54 years), consisting of 262 months on Counts 1 and 2; 120 months on Counts 3 through 6 and 9, to run concurrently with the sentence on Counts 1 and 2; a mandatory consecutive 84-month sentence on Count 7; and a mandatory consecutive 300-month sentence on Count 8. The sentence imposed was at the bottom of the applicable advisory sentencing range under the Federal Sentencing Guidelines, adjusted to account for the mandatory minimum consecutive sentences on Counts 7 and 8.[4]

Mejia appealed, challenging the denial of his motion to withdraw his guilty plea, and arguing the sentence imposed amounted to cruel and unusual punishment. *See* Appellant's Br., *United States v. Mejia*, 222 F. App'x 136 (3d Cir. 2007) (No. 05-4549), 2006 WL 5486092, at *12-22. With respect to the denial of his motion to withdraw, in addition to arguing this Court erred in assessing the credibility of his assertion of innocence, Mejia also argued his plea was not knowing and voluntary because the Government had misrepresented the mandatory minimum sentence on Count

---

[4] Mejia's Guidelines range, as determined by the Court at the sentencing hearing, was 262 to 327 months. Sentencing Hr'g Tr. 49, Oct. 6, 2005. Taking into account the 7-year mandatory minimum consecutive sentence on Count 7 and the 25-year mandatory minimum consecutive sentence on Count 8, Mejia's effective advisory Guidelines range was 646 to 711 months.

8. *See id.* at *16-19. The Government conceded it had misadvised Mejia and this Court as to the length of the mandatory minimum, but argued the error was harmless in the unique circumstances of this case, given the overwhelming factual strength of the Government's case against Mejia and his knowledge of the potential life sentence he was facing. *See* Appellee's Br., *United States v. Mejia*, 222 F. App'x 136 (3d Cir. 2007) (No. 05-4549), 2006 WL 5486091, at *24-36.[5] The Government specifically acknowledged case law from other circuits holding misinformation regarding an applicable mandatory minimum sentence justified permitting a defendant to withdraw his guilty plea; however, the Government argued withdrawal of the guilty plea was not an appropriate remedy in this case given the extremely long sentence Mejia was facing, even with the incorrect 10-year mandatory minimum on Count 8.[6] *Id.* at *34-36. Noting Mejia had not claimed he would not have pleaded guilty had he known of the likelihood of an additional 15 years on Count 8, the Government argued Mejia should not be permitted to withdraw his guilty plea based on this error, but the case should instead be remanded to permit the Government to make a recommendation consistent with the 10-year mandatory minimum reflected in the guilty plea agreement. *Id.* at *36-39.

In a not precedential opinion issued on April 18, 2007, the Third Circuit Court of Appeals affirmed the denial of Mejia's motion to withdraw his guilty plea, agreeing his proffered reasons

---

[5] Although the Government initially moved to dismiss Mejia's appeal based on the appellate waiver in his guilty plea agreement, *see* Appellee's Br., 2006 WL 5486091, at *19, the Government ultimately waived the applicability of the waiver to the extent Mejia appealed the denial of the withdrawal of his guilty plea, *see id.*; *United States v. Mejia*, 222 F. App'x 136, 138 n.1 (3d Cir. 2007).

[6] As the Government noted, with an advisory Guidelines range of 262 to 327 months, even if the aggregate mandatory minimum consecutive sentence had been 17 years, as stated in the plea agreement, Mejia would have been facing an effective advisory Guidelines range of 466 to 531 months (or roughly 39 to 44 years).

7

"lack[ed] credibility." *United States v. Mejia*, 222 F. App'x 136, 139-40 (3d Cir. 2007). The Court of Appeals then proceeded to address the serious defect the parties had identified in the plea proceedings, namely, that "Mejia pled guilty to a charge without knowing the correct mandatory minimum in contravention of Rule 11 of the Federal Rules of Criminal Procedure." *Id.* at 140. The Court concluded the error was harmless in the unique circumstances of Mejia's case, noting Mejia had not argued that had he known of the longer sentence, he would have proceeded to trial, and finding that, given this Court's repeated, explicit warnings during the plea colloquy that Mejia faced a potential life sentence, "[i]t would defy reason to suggest that, despite his exposure to multiple life sentences, Mejia would have gone to trial because of a fifteen-year change in the mandatory minimum for one count." *Id.* The Court also agreed with the Government that remanding the case for resentencing to permit the Government to recommend a sentence consistent with Mejia's guilty plea agreement was "an appropriate accommodation in this unique factual setting." *Id.* at 141. Although recognizing this Court "d[id] not have the power to sentence Mejia below 25 years for Count 8, even if it [were] so inclined," the Court of Appeals noted its expectation that, on remand, the Government would "recommend a reduction in other portions of Mejia's sentence to offset the additional 15 years to which [he] was sentenced for Count 8." *Id.*[7]

On August 20, 2007, this Court held a resentencing hearing at which the Government urged the Court to reduce the sentence previously imposed on Mejia by 15 years due to the error in the plea agreement regarding the mandatory minimum on Count 8. Resentencing Hr'g Tr. 19, Aug. 20, 2007. Consistent with its representations in the Court of Appeals, the Government recommended that this

---

[7] Because the Court of Appeals remanded the case for resentencing, it did not reach Mejia's argument that his sentence violated the Eighth Amendment. *Id.* at 140 n.2.

8

Court sentence Mejia to 82 months on all Counts other than Counts 7 and 8, plus the mandatory minimum consecutive sentences of 7 years on Count 7 and 25 years on Count 8, for a total of 466 months. *See* Gov't's Supplemental Sentencing Mem. 8-9, ECF No. 127. After hearing from the parties and considering all of the relevant factors, including the Third Circuit's opinion and the Government's recommendation of a 15-year reduction in the overall sentence, the Court reimposed a sentence of 646 months, structured the same way as the original sentence.

Mejia again appealed, and the Government again invoked the appellate waiver in his plea agreement as a basis to dismiss the appeal. Although the Court of Appeals declined to stay briefing of the merits of the appeal, the Court nevertheless addressed the waiver, concluding, upon de novo review, the waiver "was entered into voluntarily, knowingly, and intelligently," and none of the waiver's exceptions applied to Mejia's arguments regarding the reasonableness and constitutionality of his sentence. *United States v. Mejia*, 325 F. App'x 146, 147 (3d Cir. 2009). Finding this Court's sentence on remand "was imposed after 'rational and meaningful' consideration of the factors in § 3553(a)"; was not unduly severe; and did not violate the Eighth Amendment's prohibition against cruel and unusual punishment, the Court of Appeals affirmed Mejia's judgment. *Id.* at 148.

In July 2010, Mejia filed a pro se § 2255 motion raising 12 grounds for relief. Because Mejia did not use this Court's standard form § 2255 motion, as required pursuant to Local Rule of Civil Procedure 9.3 and Rule 2(c) of the Rules Government Section 2255 Proceedings, in October 2010, this Court directed the Clerk of Court to furnish Mejia with the correct form for filing a § 2255 motion and granted Mejia 30 days in which to complete it and return it to the Court, as directed by the Rules. In November 2010, Mejia refiled his § 2255 motion on the appropriate form, reasserting only the first four grounds for relief included in his original motion: (1) his guilty plea was coerced

9

and involuntary due to this Court's alleged participation in plea negotiations; (2) his plea was not knowing, intelligent, and voluntary because this Court misstated the applicable mandatory minimum sentence on Count 8 during the plea colloquy; (3) the Government breached the plea agreement by recommending a sentence in excess of the 17-year aggregate mandatory minimum set forth in the plea agreement; and (4) this Court violated his due process rights when it declined to follow the Government's sentencing recommendation at the resentencing hearing.[8] In April 2011, the Government filed a motion to dismiss Mejia's refiled § 2255 motion based on his waiver of collateral review rights in his guilty plea agreement. Mejia has not responded to the Government's motion.

**DISCUSSION**

A criminal defendant's waiver of the right to appeal or collaterally challenge his conviction or sentence is enforceable provided the waiver was entered into knowingly and voluntarily and its enforcement does not work a miscarriage of justice. *United States v. Mabry*, 536 F.3d 231, 236-37, 244 (3d Cir. 2008). When the Government invokes a waiver of collateral review rights to bar review of the merits of a defendant's claims, a court must consider (1) whether the waiver was knowing and voluntary; (2) whether the issues pressed by the defendant fall within the scope of the waiver; and (3) "whether enforcing the waiver would work a miscarriage of justice." *United States v. Goodson*, 544 F.3d 529, 536 (3d Cir. 2008) (citation omitted).

Although Mejia does not challenge the knowing and voluntary character of his waiver of

---

[8] Mejia did not reassert his remaining claims in his refiled motion; therefore, the Court will consider only the four claims set forth therein. *See* Local R. Civ. P. 9.3(a) ("All . . . motions pursuant to 28 U.S.C. 2255 shall be filed on forms provided by the Court and shall contain the information called for by such forms. Ordinarily, the court will consider only those matters which are set forth on the forms provided by the court. Any attempt to circumvent this requirement by purporting to incorporate by reference other documents which do not comply with this Rule may result in dismissal of the petition.").

collateral review rights, "a district court has an independent obligation to conduct an evaluation of the validity of a collateral waiver." *Mabry*, 536 F.3d at 238. The Third Circuit has already "reviewed [Mejia's] waiver *de novo*, and conclude[d] that the waiver was entered into voluntarily, knowingly and intelligently." *Mejia*, 325 F. App'x at 147. To the extent any additional review of the waiver is required, insofar as it pertains to Mejia's waiver of his collateral review (as opposed to direct appeal) rights, upon review of Mejia's plea agreement and plea colloquy, this Court finds Mejia's collateral waiver was knowing and voluntary. The waiver itself is extremely broad, reflecting Mejia's agreement to "waive[] *all* rights to appeal or collaterally attack [his] conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law," with only three narrow exceptions. Guilty Plea Agreement ¶ 7 (emphasis added). At the change of plea hearing, Mejia testified he had reviewed the plea agreement with his bilingual attorney, who translated the agreement into Spanish for him during her visits to the jail. *See* Change of Plea Hr'g Tr. 10-11. Moreover, this Court specifically reviewed the appellate waiver with Mejia on the record during the change of plea hearing, as required pursuant to Federal Rule of Civil Procedure 11. *See* Fed. R. Crim. P. 11(b)(1)(N) (requiring a court, prior to accepting a guilty plea, to inform the defendant of, and determine that the defendant understands, "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence"). Emphasizing the importance of the appellate waiver, this Court explained the waiver meant Mejia was agreeing that "regardless of what happens," i.e., even if Mejia "turn[ed] out to be very unhappy with [his] sentence," he was "basically agree[ing] to waive [his] appellate rights, to give them up forever." Change of Plea Hr'g Tr. 27. The Court confirmed Mejia understood that by pleading guilty he was "voluntarily and expressly waiving all

11

rights to appeal, or to collaterally attack [his] conviction, sentence, or any matter relating to the prosecution of this case," and explained the extremely limited circumstances in which Mejia would be permitted to file an appeal notwithstanding the waiver. *Id.* at 27-29. Following the Court's explanation, Mejia confirmed he understood the appellate waiver and had no questions about it. *Id.* at 29. Thus, as the Third Circuit has already concluded, the record in this case amply demonstrates Mejia's waiver was knowing and voluntary.

The Court also concludes Mejia's claims are encompassed by the broad language of the waiver. Mejia himself has advanced no argument that his claims for relief come within one of the waiver's narrow exceptions,[9] and it is clear they do not. Because the Government did not appeal from Mejia's sentence, the exception permitting Mejia to file a direct appeal of his sentence "if the government appeals from the sentence," Guilty Plea Agreement ¶ 7(a), is inapplicable. The two remaining exceptions—which permit an appeal raising a claim that Mejia's "sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 4," *id.* ¶ 7(b)(1), or that the sentencing court "unreasonably departed upward from the otherwise applicable sentencing guideline range," *id.* ¶ 7(b)(2)—likewise do not apply here. Although Mejia challenges the imposition of a sentence in excess of the 10-year mandatory minimum erroneously listed for Count 8 in the plea agreement, Mejia does not argue this Court sentenced him in excess of the statutory maximum for any count of conviction. Moreover, as the Third Circuit recognized in affirming the prison term imposed at resentencing, the 646-month sentence was "at the very bottom of [Mejia's] 646 to 711 month guideline range"; hence, this Court "did not depart upward from the applicable

---

[9] Mejia did not address the collateral review waiver in his § 2255 motion and has not responded to the Government's motion to dismiss.

sentencing guideline range, and the waiver exception does not apply." *Mejia*, 325 F. App'x at 147.

Because Mejia's collateral review waiver was knowing and voluntary and because Mejia's claims for relief are within the waiver's scope, the waiver bars this Court from reviewing the merits of Mejia's claims for relief unless enforcing it would work a miscarriage of justice. *See United States v. Khattak*, 273 F.3d 557, 562-63 (3d Cir. 2001). The Third Circuit has adopted a "common sense approach" to determining whether a miscarriage of justice would occur if a waiver were enforced. *Mabry*, 536 F.3d at 242. Under this approach, a court should consider such factors as "'the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result' . . . before invalidating a waiver as involving a 'miscarriage of justice." *Id.* at 242-43 (quoting *United States v. Teeter*, 257 F.3d 14, 25-26 (1st Cir. 2001)). "Courts apply the miscarriage of justice exception sparingly and without undue generosity, but with the aim of avoiding manifest injustice." *United States v. Castro*, 704 F.3d 125, 136 (3d Cir. 2013) (internal quotation marks and citations omitted).

Upon review of the record, this Court agrees with the Government that enforcing Mejia's waiver of his collateral review rights as to the four claims in his § 2255 motion would not result in a miscarriage of justice. Mejia's first two claims challenge the knowing and voluntary nature of his guilty plea. For his first claim, Mejia asserts his plea was coerced and involuntary due to this Court's alleged participation in plea negotiations; his second claim asserts his plea was unknowing, unintelligent, and involuntary because this Court misinformed him regarding the applicable mandatory minimum sentence on Count 8. The Third Circuit has observed "it would constitute a miscarriage of justice to enforce a guilty plea made pursuant to a plea agreement . . . the defendant

13

should have been permitted to withdraw." *United States v. Wilson*, 429 F.3d 455, 458 (3d Cir. 2005). Even assuming the foregoing claims could be deemed to be encompassed by this holding, there is no miscarriage of justice here as both claims lack merit.

Mejia asserts his guilty plea was the result of this Court's involvement in the plea process because he told his attorney he would sign the plea agreement in front of the Court only if the Court would "agree with [the] agreement," which Mejia characterizes as providing for a 17-year sentence in exchange for his guilty plea. Def.'s § 2255 Mot. 6, ECF No. 310 at 4. Mejia contends he signed the plea agreement only after the Court expressed its approval of the agreement. *Id.*

As an initial matter, Mejia's characterization of the plea agreement is incorrect. The plea agreement did not specify a particular sentence Mejia would receive. Rather, it stated Mejia was subject to a total mandatory minimum sentence of 17 years[10] and a total maximum sentence of life imprisonment, Guilty Plea Agreement ¶ 4, and it specifically disavowed that anyone "ha[d] promised or guaranteed to the defendant what sentence the Court will impose," *id.* ¶ 5. Moreover, the record does not reflect that the Court ever characterized the plea as an agreement for a 17-year sentence or otherwise expressed approval of such a sentence. To the contrary, at the change of plea hearing, the Court repeatedly cautioned Mejia about the possibility he could receive a life sentence, emphasizing the decision as to what sentence to impose was for the Court and that no one could guarantee what his sentence would be. Change of Plea Hr'g Tr. 14, 21-22; *see also id.* at 30 (confirming Mejia understood "that if I impose a more severe sentence than you expect, or anyone else recommends to me, that you will not be entitled to withdraw your guilty plea"); *id.* at 33 (confirming Mejia understood the Court was not required to follow his counsel's or the Government's sentencing

---

[10] As set forth above, the correct aggregate mandatory minimum was 32 years.

14

recommendations). While the plea agreement bears the handwritten date June 20, 2005, the date of the change of plea hearing, there is no indication in the record that Mejia signed the plea agreement in this Court's presence or that the Court participated in any way in the parties' plea negotiations. Even assuming Mejia did sign the plea agreement in court, the record refutes Mejia's claim that the plea agreement contemplated a 17-year sentence or that this Court ever agreed to impose such a sentence. Consequently, Mejia cannot show the Court participated in plea negotiations by expressing approval of a 17-year sentence.[11]

As to Mejia's claim that his plea was not knowing, intelligent, and voluntary because this Court (and the Government) understated the applicable mandatory minimum sentence on Count 8, the Third Circuit has already considered this "serious defect" in Mejia's plea proceedings as part of Mejia's first direct appeal, and concluded the error did not warrant permitting Mejia to withdraw his guilty plea in the unique circumstances of this case. The Court recognizes that both as a matter of constitutional due process and under Federal Rule of Criminal Procedure 11, which embodies "[t]he

---

[11] To the extent Mejia argues his attorney misrepresented the plea to him as an agreement for a 17-year sentence, any such misunderstanding was dispelled during the plea colloquy when this Court repeatedly and pointedly advised Mejia of the possibility he could receive a life sentence. *See United States v. Jones*, 336 F.3d 245, 254 (3d Cir. 2003) (holding defendant's guilty plea was not involuntary due to ineffective assistance of counsel despite defendant's claim his attorney had erroneously "guaranteed" him a sentence of 57 to 71 months where the district court warned defendant of the maximum sentence he was facing at the plea colloquy); *United States v. Mustafa*, 238 F.3d 485, 491-92 (3d Cir. 2001) (holding court's failure to inquire further when the defendant answered "yes" to the court's inquiry whether any promises had been made to him regarding his guilty plea did not render the guilty plea involuntary, and observing "any alleged misrepresentation that [defendant's] former counsel may have made regarding sentencing calculations were dispelled when Mustafa was informed in open court that there were no guarantees as to sentence, and that the court could sentence him to the maximum"). The Court also notes Mejia's counsel stated at the sentencing hearing that she "ha[d] been very clear with [Mejia] since day one" that he would be facing a sentence requiring him "to spend the balance of his life in a prison." Sentencing Hr'g Tr. 20.

constitutional requirement that a guilty plea be 'knowing' and 'voluntary,'" *United States v. Schweitzer*, 454 F.3d 197, 202 (3d Cir. 2006), the applicable mandatory minimum sentence to which a defendant's guilty plea will subject him is one of the "direct consequences" of the plea of which the defendant must be advised for his guilty plea to be knowing and voluntary. *See* Fed. R. Crim. P. 11(b)(1)(I) (requiring a court to "inform the defendant of, and determine that the defendant understands . . . any mandatory minimum penalty" before accepting the defendant's guilty plea); *Jamison v. Klem*, 544 F.3d 266, 277-79 (3d Cir. 2008) (holding the record did not establish state habeas petitioner's guilty plea was knowing, voluntary, and intelligent where the petitioner was not advised of potentially applicable mandatory minimums prior to the trial court's acceptance of his guilty plea). Here, however, the Third Circuit expressly considered the fact "Mejia pled guilty to a charge without knowing the correct mandatory minimum in contravention of Rule 11," *Mejia*, 222 F. App'x at 140, an issue raised on appeal by both parties,[12] and concluded the error was harmless, noting "[i]t would defy reason to suggest that, despite his exposure to multiple life sentences, Mejia would have gone to trial because of a fifteen-year change in the mandatory minimum for one count," *Mejia*, 222 F. App'x at 140. Mejia has not demonstrated why this Court should revisit this issue. *Cf.*

---

[12] Although Mejia's appeal from the denial of his motion to withdraw his guilty plea focused primarily on the denial of his written motion in which he asserted his innocence, he also observed there was a "significant question as to the fundamental voluntariness of [his] guilty plea in the first place," given the Government's misstatement of the mandatory minimum on Count 8, on which he "had based his decision to plead guilty in the first place." Appellant's Br., 2006 WL 5486092, at *16-17; *see also id.* at *18-19 ("Given that the mandatory minimum as represented by the Government was later changed, defendant's guilty plea cannot truly be said to have been voluntary and knowing."). Similarly, while the Government did not consider Mejia to have "squarely presented" the issue of the Government's mistake regarding the mandatory minimum, it nevertheless urging the Court of Appeals to consider the ramifications of the mistake, including whether Mejia should "be permitted to withdraw his plea because the court and the government provided incorrect information regarding the maximum sentence." Appellee's Br., 2006 WL 5486091, at *26.

*United States v. Orejuela*, 639 F.2d 1055, 1057 (3d Cir. 1981) ("Once a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. § 2255."); *see also United States v. Hines*, No. 08-13, 2012 WL 1694393, at *2 (E.D. Pa. May 15, 2012) (declining to consider argument in § 2255 motion that district court had violated defendant's plea agreement by imposing a sentence greater than the 10-year maximum stated therein where the Third Circuit had considered and rejected the same argument on direct appeal). The Court therefore finds this claim does not present a miscarriage of justice.

For his third claim, Mejia alleges his due process rights were violated because the Government breached the plea agreement. While the Third Circuit has held "[a] defendant's appellate waiver is not enforceable if the government breaches its own obligations under a plea agreement," *United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008), Mejia has not demonstrated such a breach here. In support of his claim, Mejia asserts his attorney advised him that the Government promised in the plea agreement that his sentence would not exceed the mandatory minimum penalties set forth in the agreement, i.e., 17 years, with his sentence on the remaining counts to run concurrently. *See* Def.'s § 2255 Mot. 9, ECF No. 310 at 7. Insofar as Mejia contends the Government breached an alleged promise of a 17-year sentence, the record refutes his contention there was such a promise, as set forth above. *See, e.g.*, Guilty Plea Agreement ¶ 4 (stating the Court may impose a total mandatory minimum sentence of 17 years and a total maximum sentence of life imprisonment); *id.* ¶ 5 (stating "[n]o one has promised or guaranteed to the defendant what sentence the Court will impose"); Change of Plea Hr'g Tr. 14, 21-22 (emphasizing the possibility Mejia could receive a life sentence). Even assuming Mejia's attorney in fact misrepresented the sentencing provisions of the plea agreement to

17

him, Mejia cannot reasonably have understood the plea to have required a 17-year sentence, given this Court's explanation of his sentencing exposure at the change of plea hearing. *See United States v. Nolan-Cooper*, 155 F.3d 221, 239 (3d Cir. 1998) (holding in determining whether the government breached a plea, a court must "examine what the defendant reasonably understood she would be receiving from the government in return for her plea of guilty").

Moreover, to the extent the Government's failure to advocate a sentence consistent with the mandatory minimum penalties specified in the plea agreement could be deemed to constitute a breach of the agreement, such breach has already been remedied. Following Mejia's initial direct appeal, the Third Circuit vacated Mejia's sentence and remanded the case to permit the Government to recommend a reduction in other portions of Mejia's sentence to offset the 15 years by which the actual mandatory minimum on Count 8 (which this Court was required to impose) exceeded the mandatory minimum set forth in the plea agreement. *Mejia*, 222 F. App'x at 140-41. On remand, the Government made the contemplated recommendation. Resentencing Hr'g Tr. 19; *see also* Gov't's Supplemental Sentencing Mem. 8-9, ECF No. 127. Because any alleged breach of the plea agreement has already been remedied, this claim does not present a miscarriage of justice.

Finally, Mejia alleges his due process rights were violated at resentencing because this Court breached the plea agreement by declining to accept the Government's recommendation of a reduced sentence. The Government's sentencing recommendation, however, was not binding on this Court, which remained free to impose a sentence above the Government's recommendation. *See* Fed. R. Crim. P. 11(c)(1)(B) (providing the Government "may recommend . . . that a particular sentence or sentencing range is appropriate," but "such a recommendation . . . does not bind the court"); Guilty Plea Agreement ¶ 6 (stating parties' sentencing stipulations are not binding on the Court). The Court

thus remained free to sentence Mejia above the Government's recommendation. Indeed, the Third Circuit has acknowledged as much, having affirmed the 646-month sentence this Court imposed at resentencing upon finding the sentence "was imposed after 'rational and meaningful' consideration of the factors in § 3553(a)." *Mejia*, 325 F. App'x at 147-48. The Court's decision not to follow the Government's sentencing recommendation thus does not present a miscarriage of justice.

Upon review of the record of the prior proceedings in this case, and for the reasons set forth above, this Court concludes (1) Mejia's waiver of his collateral review rights knowingly and voluntarily; (2) the claims he seeks to raise in the instant § 2255 motion are within the scope of the waiver; and (3) enforcing the waiver would not work a miscarriage of justice in the circumstances of this case. Accordingly, the Court will grant the Government's motion to dismiss Mejia's § 2255 motion. Because Mejia has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.

An appropriate order follows.

BY THE COURT:


   /s/ Juan R. Sánchez
Juan R. Sánchez, J